Our final case is Agenda No. 24, Case No. 107852, Interstate Scaffolding v. the Workmen's Compensation Commission, et al. Counsel may proceed. May it please the Court, Counsel. My name is Mark Perper, and I represent the petitioner, Jeff Urban. As the Court knows, this is a judicial review of a decision in the Illinois Workers' Compensation Commission. We're asking that the Court reverse the judgment of the appellate court and reinstate the judgment of the circuit court affirming the commission's award of compensation for temporary total disability. The issue, as we've framed it, is whether an employer may disqualify an injured worker from receiving temporary total disability benefits merely by firing him for reasons that were arguably pretextual. Counsel, is there any evidence in the record that they were pretextual? Yes, Your Honor. Very briefly, the respondent, the employer, contended that the petitioner was fired for a graffiti infraction. Is that pretextual? Perhaps not, but there's considerable evidence in the record that the real basis for the firing might have been that he had complained about what he felt was a dubious payroll deduction. The payroll officer and the assistant to the president disagreed and felt that, in fact, the petitioner was being overpaid to the tune of $546. And when the petitioner felt threatened during this conversation, he called the police. The police arrived, and it was only then that he was fired. And I think if the court would even take a look at the incident report of Jan Coffey, who was the individual that communicated the president's desire to fire the petitioner, I believe that was Respondent's Exhibit 7, one could just as easily conclude that he was being fired because of the disagreement over the payroll deduction as the graffiti incident. Is there a question of law here? The appellate court characterized it as a question of law. We think it was a question of fact. And, in fact, the commission found that the petitioner was entitled to compensation for temporary total disability up through the date of arbitration, based upon the fact that his condition had not stabilized to a point of maximum medical improvement. The pretextual situation, allegedly pretextual situation, that's not an issue before this court, right? You would agree with that? I think it is, Your Honor. In what sense? Based upon the manifest weight standard of review, the commission could have drawn inferences from this record that the petitioner was fired for reasons that had nothing to do with the basis that was alleged by the respondent. Does that enter into a workman's comp claim, though? Should the reason for cause really make any difference? We don't believe it should, and it's never been the law in Illinois. The issue seems to be either there's two ways to look at it, either broader or more narrow than that. Isn't the issue simply what was claimant entitled to continue TTD benefits following his firing, where that firing for misconduct, regardless of whether it was pretextual or not, was wholly unrelated to his injury? If one assumes that he was fired for misconduct, I mean, I think what happens is we're placing the commission in a position of having to evaluate issues that are not within its purview, particularly in a case like this, where there was no finding by either the arbitrator or the commission that there was a firing for misconduct. That was something that was inserted by the appellate court. The arbitrator ---- Would you explain exactly what you meant by what you just said? Because I don't understand what you meant about what the commission did that they should have been required to do or something like that. What is that? We're satisfied with the commission's resolution of this case, but I think based upon the appellate court's holding, the commission will now be placed in a position of having to determine the basis of a firing, whether the firing was for what the appellate court called a volitional act of misconduct, and furthermore, it's a one-size-fits-all approach. Once one concludes that the firing was for misconduct, no matter how profoundly disabled this man might be and no matter how insignificant the misconduct, it seems to me based on this appellate court's decision, the commission is going to be bound to deny temporary total disability. Have I answered your question? I think so. But there isn't any dispute that he was let go, that he was not let go because of his injury, is there? Well, certainly there were incidents of graffiti in this workplace prior to the time Mr. Urban was fired. There's no evidence that those individuals were ever disciplined, let alone fired. There were obscene drawings on the shelves and on the uprights. There was an unflattering drawing of, I believe, the owner's son, and none of those individuals were ever disciplined. There's evidence in the record that they were identified. The earlier graffiti maker was identified? I don't know that, but I do know that there was, and I think it's uncontroverted in this record, that there was no evidence that anybody was ever disciplined for graffiti. Are you saying Mr. Urban was not found to have done that? I think what Mr. Urban was accused of and what he agreed he did was writing religious graffiti on the walls, namely, Jesus is the word and the way and the life, and it's not what is seen but what is unseen. Now, in addition to what he wrote on that, and he doesn't deny that. Boy, I really have to jump in here. I really think, although very interesting, the facts for perhaps a retaliatory discharge claim, I have down here. Tell me where I'm wrong. The court found, the appellate court, that allowing an employee to collect TTD benefits from his employer after he was removed from the workforce as a result of volitional conduct unrelated to his injury would not advance the goal of compensating an employee for a work-related injury. Is that, regardless of why he was let go, regardless of the facts of this case, isn't that the issue before the court? Maybe I'm wrong because so far the only thing we've been talking about are the facts related to the firing. I think it begs the question because I don't think it's clear from this record that he engaged in, strike that, I don't think it's clear from this record that the basis for the firing was a volitional act of misconduct. There was an individual in this plant or at this facility who was charged with sexual harassment in the workplace. That individual did not have a worker's comp claim, was not an injured worker, and he wasn't fired. Mr. Urban drew graffiti on the walls, which supervisory people knew about for six weeks, did nothing about it, didn't ask him to clean it up, didn't ask him to paint over it. So are you taking a position then that he was fired for something related to his injury? I think based upon this record, the commission could have drawn that inference, and I think under the manifest weight standard of review, deference is due to the commission. And I would remind the court the commission awarded TTD through the date of arbitration, and nowhere in the commission's decision or the arbitrator's decision was there a factual finding that this man was fired for misconduct. That was something that the appellate court inserted, really substituting its judgment for that of the commission on an issue of fact. Do you embrace the two dissenting justices in the appellate court in their following of the position in the Seagraves case? Well, we've argued in the alternative that if there's going to be a rule permitting a respondent to refuse to reinstate TTD following a firing, I mean, if that's the law, which, again, we don't believe it is. It's never been the law in Illinois. But if it is, there has to be a framework for it. And certainly the dissenting opinion of Justice Donovan citing to the Seagraves decision would employ just that sort of framework, namely that it would have to be an affirmative defense. Otherwise, we as petitioner are placed in a position of having to prove a negative, that the firing was for something other than volitional misconduct, having to prove essentially what the motive of the employer was. Excuse me. Then what point is it that the employee's medical condition prevents him from finding new work? I mean, doesn't that just collapse that second prong? Well, I think that's the employee's burden on rebuttal of the employer's proof of its prima facie affirmative defense. The employer would have to show that under the Seagraves approach and under Justice Donovan's dissent, that the injured worker violated a rule or policy. That was not shown in this case. There was no established policy. Secondly, that he was fired for a violation of that rule or policy. Again, it's not clear from this record what the basis of the firing was. Again, Coffey's memo, if the court would take a look at that, one could just as easily conclude that he was fired for having an argument over his paycheck. Thirdly, I'm sorry. Then to go back to Justice Thomas's question, if this court answers that question, we're given an advisory opinion, aren't we, under your theory? I don't see how. Because you're saying there was no ‑‑ I mean, suppose this court would say we affirm what the appellate court did. You're saying, well, that may be the rule, but it didn't happen here. He wasn't fired for volitional conduct. On these facts, I don't think the court can affirm the appellate court. Because I think on this record, again, on the manifest weight standard of review, one, the commission is entitled to draw reasonable inferences from the record, and the issue is going to be whether there's evidence in this record supporting the commission's determination. The reviewing court can't substitute its own judgment. If a misconduct inquiry is determined to be foreign to the Illinois workman's compensation system, then we could affirm the appellate court's decision. I believe no. With all due respect to the court, I don't think so. I think the court would be compelled to reinstate the commission's decision, provided there's sufficient evidence in the record from which those inferences could be drawn. The inference being in this case, assuming that that's not the law, Your Honor, that the petitioner's condition has not reached maximum medical improvement, he's not able to return to his pre-injury work without endangering his health, and he's in need of further medical treatment, in this case a spinal fusion. Here's what you said on page 16 of your brief. According to the majority, both City of Granite City and Schmidgall hold that the critical inquiry in determining one's eligibility for TTD after leaving the workforce is whether the departure was voluntary. However, contrary to the appellate court's analysis, it is well established that the dispositive inquiry governing one's eligibility for TTD is whether petitioner's condition has stabilized, that is, whether the employee has reached MMI. That's always been the law, going back to cases. We've cited cases dating back to 1920, and it's always been the law in Illinois. There has never, to my knowledge, been a reported case from an upper court in Illinois holding that the basis for a firing is relevant in determining a petitioner's eligibility for TTD. And would you then say that's regardless of the reasons for the firing? Well, I suppose one could come up with an outrageous example. You know, if an individual came into a workplace, you know, with the machine gun. I'm just trying to get to the point of whether we're looking at the reasons for the firing here. I don't think the court has to do that in this particular case. But if you're going to, then I would fall back on the Seagraves approach. Based upon what Justice Thomas just read, isn't it true that you don't even look at whether the act was volitional or not? You decide it on the existing law relative to temporary disability? I believe that's correct. So we don't even have to talk about graffiti or paychecks being questioned? Indeed, Your Honor. And I think that's the way the commission looked at it. I mean, I don't know, but it was a very perfunctory decision, as you know, that merely reversed the arbitrator's denial of TTD through the date of arbitration. And even the arbitrator's decision doesn't address the basis of the firing. He merely, and I know we're not supposed to quote from decisions, but very briefly the arbitrator stated, notwithstanding the divisive conflicting testimony regarding the arguments and confrontations and the unusual basis for the termination of the petitioner, the arbitrator finds that he's not entitled to temporary total disability. So the arbitrator really just sort of glossed over what the basis was for the firing and simply found that the man wasn't temporarily totally disabled. The commission reversed, finding that he was. This is really a policy call for this court, isn't it? Well, in a way, it's a policy call for the General Assembly. Because there's nothing in this. Foreign jurisdictions have gone, foreign courts have ruled on this issue, and they've gone both ways. They've gone in all directions, absolutely. We'll hear from opposing counsel how it's a windfall if you're fired for something separate and apart from the injury in question and continue to receive TTD. And I think the policy argument that may be raised is, well, in certain circumstances, why wouldn't an employee want to get fired if they were going to continue to get TTD? So is that what we're judging? Is it a policy call for this court? I would answer that in two ways. First of all, one could just as easily imagine a situation where an employer could create a trumped-up reason for, take an individual back to light duty on a temporary basis, then create a trumped-up reason to discharge him in order to be able to not reinstate his compensation for temporary total disability. And clearly, I mean, this can have profound consequences, as the court knows, because we're talking about people, graffiti or no graffiti. Mr. Urban is an individual who is disabled, is not able to return to his pre-injury job, needs a neck fusion, and he's going to be destitute as a result of this. It is not as if he went in and assaulted someone or committed embezzlement, as counsel alluded to in his brief. He wrote Jesus saves on the wall, and that was tolerated until he complained about something else. Forgive me, but I forgot the second point of Justice Thomas. Well, I forgot my question, so we're even. Oh, the cases from other jurisdictions, they've gone both ways, but in many, not all, but some of those states, the defense was statutory. In Illinois, it's not statutory. If the General Assembly wants to create a defense of this nature, they've amended the act many times. They can amend it again. But under existing law, we believe that the commission, and I see I'm out of time. The red light. Okay. Well, if there are no further questions, I thank you for your attention, and we would request that the decision of the commission be reinstated. And I thank you. Good morning, Justices, Counsel. My name is Tony Cochillo, and I'm here on behalf of the Appali Interstate Scaffolding. And we are asking the court to affirm the decision of the appellate court. Mr. Cochillo, why doesn't the dissent have the best view here? Namely, that the ultimate and only question is whether the employer remains unable to perform at his formal level as a result of the injury sustained, that being in the course of working for the employer. Why isn't that the best result here from a legal standpoint rather than a policy position? Well, I believe that the dissent in their use of the Seagraves decision is flawed. The analysis that they go through at Seagraves with the four-part test required of the employer and then the burden shifting back to the employee is unnecessary, and it's our position it's unfair to employers. The commission is well equipped to hear evidence and distinguish between terminations for misconduct and those that are pretextual. For example, if the commission is able to decide whether an employer's job offer is a sham, it can also adequately decide whether a termination from light duty is a sham or pretextual. If the commission is able to weigh evidence as to whether an employee cooperated with vocational rehabilitation and job placement, and these types of hearings go on every day in front of the commission, then the commission can also weigh evidence whether an employer was fired from a light duty job for his own volitional misconduct or because the employer was attempting to avoid liability under the Workers' Comp Act. And then the other, the real sticky point with Seagraves and the analysis by the dissent is that under Seagraves, even if the employer is able to meet its burden under the four points outlined in Seagraves, the burden then shifts back to the employee, and the employee would still be awarded TTD benefits after the termination if he could simply show that his medical restrictions from the work-related injury prevent him from securing employment at pre-injury levels. I submit to you that an employee will be able to meet this burden 100% of the time, because the very reason that he's on light duty is because he has medical restrictions. So following this termination from misconduct, he's still going to have the restrictions. Well, if that's the case, then doesn't that collapse the first prong? In other words, does it make any difference whether his conduct warrants the termination? If you're saying that the employee still can prove that he cannot find work because his medical condition still exists, then really what has the termination cause have anything to do with that? Well, our position is that if you use the second part of the Seagraves test, then that essentially obliterates the whole test. In other words, you might as well not even have the test, because the employee is going to be able to show, I submit to you, in every case that he's unable to return to work at pre-injury levels if he still has medical restrictions following the termination for his own misconduct. I don't understand how he would always be able to show that. I thought as long as you're receiving TTD, you're always subject to reevaluation. That's true. And that could end at any time. That's true, yes. So again, why would the termination reasons have anything to do with whether or not he should still receive benefits? Well, from our perspective, it is a policy argument to a certain extent that you have employers providing light-duty work, and those employees who commit volitional acts of misconduct and are terminated should not be rewarded for such conduct. I've argued in my brief that that could potentially have the effect of actually encouraging misconduct. It could undermine light-duty. Why even have light-duty if somebody can commit any act on light-duty, get fired, don't worry about it, you're still going to get your TTD checked. Even if an employee seeks to intentionally get fired while receiving TTD, the employer can still have him evaluated by physicians. Yes. And bring that back before the commission and establish that he's no longer disabled to any extent. If the employer is able to prove to the commission or able to obtain evidence that he's no longer. That's the nature of workman's comp law, isn't it? Yes. If the injured worker engages in misconduct, if his pre-misconduct injury keeps him from finding employment, why shouldn't he receive benefits for whatever effect that injury has on his future employment prospects? Justice, do you mean he's still temporarily disabled? Yes. Okay. I mean, he was temporarily disabled before. He's temporarily disabled afterwards. In the interim, maybe he has been assigned light-duty work, which would mean, a.k.a. not at the same level he was at before. So when this person, male or female, goes out to find work, they're not going to be able to find the full range of work they would have been able to find if they were healthy. They have some, at least arguably, some diminished ability to find meaningful employment. My response to that question would be, but for that employee's misconduct, he or she would still be working for the employer against whom he filed a claim until his condition reached a state of permanency. It was that employee's, in this case Mr. Urban's, own hand that wrote the graffiti on the wall that led to his termination. So it's kind of a double whammy. I mean, the person not only loses his job, he loses any comp benefits. Well, I would like to address not any comp benefit. If I may. Sure. If the volitional misconduct is part of the calculus in determining whether or not this man is going to get benefits, how can we deny him the right to question the correctness of the finding that this was volitional misconduct? I think he has a right to question that. And our position would be that that question of the protection. Did he get to question it here? He had the opportunity to. Both sides put on evidence in front of the arbitrator and Joliet. He had an opportunity to present evidence. But this all happened after the arbitrator, didn't it? I'm sorry. Oh, you mean the change in the law as far as the appellate court. Yes, it did. My only point is, and I'm listening to whether or not he painting graffiti on the back wall of a warehouse is a firing offense. If that's going to mean something, it's going to mean whether or not he keeps his job, keeping his job to affect the ability to get benefits, how can you say to him when it becomes germane you can't offer any evidence as to that and it's a decided factor that this was volitional misconduct? When we tried the case, we put on evidence and gave reasons for his firing. The only thing I can say to that is he had an opportunity at that time to offer evidence to the arbitrator that he was fired for some other reason. That's the only response I have. It's almost a forfeiture argument at this point. Well, you could look at it that way. Also, counsel, then we have to entertain the idea that on every factual basis that graffiti on the wall, even though Mr. Ervin agreed to it, is an offense that would cause termination. And then we'll have to get into determining what offenses require termination. Well, as I indicated earlier, I believe, unlike my opponent, the commission is equipped and they make these decisions on employment issues day in and day out. They decide whether my client is offering a job, whether it's a bona fide light duty offer, whether it's a sham, this is an extension of that. They're deciding whether the firing was related to the work injury or due to misconduct. And the arbitrator and the commission can weigh the evidence put in by both sides in that respect. Did the arbitrator here make an actual finding that he was discharged for cause? No. I would say that it was implied, but it was not in the body of his decision. He did not say fired for cause. No. So it was not an issue before the arbitrator? We brought it as an issue. The arbitrator didn't put it in his decision, but that was the basis for our defense to temporary total disability benefits. If we don't employ the legal rationale of the dissent, where the employer has to come forward and show certain factors, and if they do, then the burden shifts to the employees, as we've already discussed. And only look at it as whether or not the firing is related or unrelated to the injury, and then counsel is going to say, you're still entitled to TTD, and you're going to say no, you don't. Then we're left with the policy question. And as I think about the policy question, aren't there the same type of policy considerations on the other side? Might there be motivation for the employer to let somebody go if under these circumstances there isn't going to be TTD assigned after the let go from employment? They want to get rid of somebody and rid of the fact that TTD is going on. Yes. I can see both sides taking advantage of the situation, no matter which way you rule. My issue with Seagraves – Should we remand this for factual findings by the commission? I'm asking this court to affirm the appellate court. I think the appellate court was a well-reasoned decision. I think it's a logical decision. You commit bad behavior, you're fired, you shouldn't be any more protected than any other employee at the facility. Justice Thomas, my issue with the Seagraves case isn't so much what the employer has to show. It's that last prong of the test where it basically – what the employee then has to show simply obliterates the test. You might as well not even have the test, because I can put on evidence at trial and show that it was a good firing, a legitimate firing, it wasn't related to the work injury, and all the employee has to do then is come in and show that you can't return to pre-injury levels. I mean, it's not even a test from my perspective. Isn't the reverse also true, though? The employer could just as easily manufacture the cause? Which is why I believe that the arbitrator and the commission could hear witnesses, and there's a lot in the briefs about there's no discovery. We put on witnesses every day. The arbitrator hears evidence. Both sides are free to subpoena witnesses. They can subpoena personnel files. They can call people in and find out who else has been fired. They can find out the company's policy on terminations. So that's why I think it's something that the commission is within their purview. In looking at the advantage that the employer or the employee could take in this situation, you do have the ability of the employer to have the employee submit to medical evaluation. So if he's pretending a continued total disability, that could be refuted by medical testimony,  But the same thing is not available to the employee, except in an evidentiary hearing on the basis for the discharge. I would agree with that. Counsel, temporary total disability is a Section 8B benefit. Section 8B? Did you say temporary total, Justice? Yes. 8B? I believe so, yes. And is there anything in Section 8B or elsewhere in the Act that authorizes the termination of TTD if the disability continues to last? Is there any statutory authority for that? I know one of the amicus briefs cites Section 19D, and this section allows the commission to suspend or reduce benefits if the injured employee, quote, his recovery. So that's connected. So it's like not going to physical therapy. So that's related to the medical status. I would agree with that. So there's no statutory basis to terminate TTD but for that? I don't believe there's a statutory basis, although I think that the decision of the appellate court follows a long line of cases that place limitations upon an employee's collection of temporary total disability benefits. Counsel would have you believe that if you're temporary totally disabled, there's no argument you get your benefits. There are limitations. I won't go through all the cases, but you have the city of Granite City, Schmidall, all place limitations on the receipt of temporary total disability if there is volitional conduct. That's the key analysis. It's the own conduct of the employer or misconduct. Just to follow up on an earlier question by Justice Garmon, do you agree or disagree with Mr. Perper that the commission made no finding on misconduct? I agree. And would you then agree that the appellate court introduced this misconduct concept into the case that didn't exist before it hit the appellate court? I don't believe that the arbitrator implied that the petition was terminated for misconduct. Well, when we read the record, is there anything that's going to tell us that? Other than the employer's evidence of testimony and he was given a termination slip that said he was terminated for writing graffiti. Well, when we read the decision of the arbitrator, is there anything in it? There are no specific words that he was terminated for misconduct. In citing Freeman United Coal Mining case, the majority of the interstate scaffold concluded that the overriding purpose of the Illinois workers' compensation scheme is to compensate an employee for lost earnings resulting from a work-related disability. Mr. Urban's conduct of writing religious slogans on the walls with a permanent marker is not related to his work injury in any way, shape, or form. He should not be rewarded with a windfall of temporary total disability benefits. As I indicated earlier, to award such benefits for volitional misconduct underlines the valuable concept of light-duty programs and could actually have the effect of encouraging bad behavior of those working on light-duty jobs. For these reasons, as well as the additional arguments contained in the briefs, I respectfully request this court affirm the decision of the appellate court. And unless you have any further questions, Justices, my argument is complete. Thank you. Thank you. Very briefly, regarding the, well, to Justice Kilbride's questions, there are statutory defenses to TTD. The legislature chose to insert those defenses really as almost an exception to the general rule that workers' comp is a no-fault system, as we've discussed in detail in our brief. And that's how the system was designed. For example, the Justice mentioned or counsel mentioned vocational rehabilitation. Vocational rehabilitation is in the statute. It's at least an implied understanding that both parties will cooperate with a reasonable plan of rehabilitation. And if you don't, there are consequences. On the petitioner's side, you might not receive benefits. On the respondent's side, you might have penalties imposed. Section 19D, as Mr. Caciola mentioned, provides that if the petitioner engages in a persistent injurious practice, if he does something harmful to himself that prolongs his disability, his TTD benefits can be suspended. Section 12, as Justice Freeman mentioned, provides for the right of an employer to obtain a medical examination of the petitioner. If he doesn't show up, his benefits will be suspended. So the legislature has created defenses. They could create this defense if they were to choose to do so. They haven't chosen to do so. Now, regarding the Segrave's test, I strongly disagree that the rebuttal prong of the test obliterates the entire test. The rebuttal prong of the test goes to, and I think even the appellate court's majority recognizes this, it goes to the issue of proximate cause, whether the cause of the inability to find work is the disability or the misconduct. And one could certainly imagine many examples of situations where the misconduct is the cause of the inability to obtain work. For example, if the misconduct was such that the petitioner ended up being incarcerated, I think that would be the cause of his inability to obtain work. How do you address opposing counsel's specific problem with the last prong of the Segrave's test, which seems to say, and just looking at the dissent a second ago, seems to say that all the employee has to do is come forward and show the injury is related to the wage loss. I think he has to show that the injury is the cause of his ongoing disability rather than the misconduct being the cause. And I think a fair reading of both Segrave's and Justice Donovan's dissent will indicate that. And Segrave's, then, and Justice Donovan's dissent seem to hinge on, has already made a policy determination, something that we discussed here, that an employer shouldn't be able to use any type of pretext to get out of the TTD, right? I think that's correct. And just to briefly take a look at the facts of Segrave's, it involved an individual who, during horseplay, exposed her buttocks in the workplace, and she was fired for having done so. And as I recall, I believe the North Carolina equivalent of our industrial commission awarded compensation. An intermediate court reversed, and then the Court of Appeals or Supreme Court in North Carolina held, just as Justice Donovan would have held, that it's not enough that she was fired. That's not enough to cut off her TTD. The question is, again, as the dissent indicates, whether the infraction was of a nature that it would ordinarily justify a firing of a non-injured worker, whether there was a policy in effect and so forth, all those factors that we've discussed. And none of those things were proven in this case, including the fact that he was actually fired for the graffiti. We know he committed the graffiti infraction, but so did other individuals. And there's just no evidence of any policy on graffiti, nor is there any ‑‑ I won't say there's no evidence, but there's certainly evidence that he was fired for other reasons. There has to be a way to protect injured workers from the situation that we've described, where an employer can offer light duty almost as a sham, and then find some trumped up reason to discharge that individual, some picayune allegation of misconduct, and use it as a way to refuse to reinstate the individual's temporary total disability. It's another way of starving out the injured worker, which is what, frankly, the insurance industry and employers across the state have been looking for throughout the existence of the workers' comp system for the last 90‑some odd years. The question was asked, should we have the opportunity to offer evidence as to the basis for the firing? I think if we're going to adopt the Seagraves approach, the answer is yes. I also think that we did. I think on this record, the commission's decision can be affirmed, because there was evidence that he was fired for reasons unrelated to the graffiti infraction, and one might be able to infer from this record, given the disparate treatment between the petitioner and his coworkers, that, in fact, he was let go because he was injured. And I believe Jan Coffey herself said to the petitioner during that heated discussion on May 25th, and forgive the profanity, but she said, it's bullshit that Ron Fowler even has you on this job. Now, what does that mean? That could mean that he doesn't deserve to be employed, because he's impaired. Finally, as I'm running out of time, in going back to our primary prayer for relief, and our main argument, if the courts are going to get into the issue of what is and what is not a fireable defense, we're essentially turning the Workers' Comp Commission into the Department of Employment Security. And we cited a Department of Employment Security case in, I think, our reply brief. And essentially, the law at the Department of Employment Security is whatever the employer says goes. If the employer says it's misconduct, then it's misconduct. And the case we cited involved an individual who made an obscene phone call from her personal phone to a co-worker's personal phone during non-business hours. And the co-worker played the voicemail for the employer, and the employer said, well, that's volitional misconduct. You're fired, and we're going to refuse to stipulate to unemployment compensation benefits. And that decision was affirmed by the appellate court. Well, the Workers' Comp system looks at things another way. And as the court knows, it's social legislation. The statute is supposed to be construed liberally in favor of the injured worker. If there are no further questions, I thank the court for its attention. Thank you, counsel. Thank you.